# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                            No. CV 10-0618 JB/LAM
                                     CR 09-1801 JB

LUIS CARLOS SANCHEZ[-]CALDERON,

        Defendant/Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Defendant/Movant (hereinafter "Defendant") Luis Carlos Sanchez[-]Calderon's Section 2255 motion [*Doc. 1*],[2] memorandum of law in support of his motion *(Doc. 2)*, and affidavit in support of his motion [*Doc. 3*], all filed on June 29, 2010. Plaintiff/Respondent (hereinafter "the Government") filed a response [*Doc. 9*] to the motion on August 2, 2010, and Defendant filed a reply to the Government's response on August 23, 2010 [*Doc. 11*].

United States District Judge James O. Browning referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 4*]. Having considered the parties' submissions, relevant law, and the record in this case and

---

[1]**Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2]Unless otherwise noted, all referenced documents are from Case No. CIV-10-0618, and all page number references are to the electronic page numbers listed in the PDF header at the top of the document in the CM-ECF docket.

in Defendant's underlying criminal case contained in Case No. CR-09-1801, the undersigned recommends, for the reasons set forth below, that the claims raised in Defendant's ***Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1)*** be **DENIED** and that Case No. CIV-10-0618 be **DISMISSED with prejudice**.

### Factual and Procedural Background

On May 4, 2009, Defendant was charged with re-entry of a removed alien in violation of 8 U.S.C. §§ 1326(a)(1) and (2) and 1326(b)(2). [*Doc. 1*, filed in Case No. CR-09-1801]. Federal Public Defender Joseph Gandert was appointed to represent Defendant in his criminal case. [*Doc. 5*, filed in Case No. CR-09-1801]. On May 15, 2009, the Government sent a letter to Defendant's counsel wherein it offered Defendant a plea agreement and stated that Defendant "does not qualify for the standard Fast Track [plea] treatment because [his] criminal history contains crimes of violence or other disqualifying types of felony convictions." [*Doc. 9-1*]. On July 1, 2009, Defendant pled guilty pursuant to a "Non-Standard Fast-Track Plea Agreement." [*Doc. 14*, filed in Case No. CR-09-1801]. Under the terms of the plea agreement, the Government agreed to a downward adjustment for Defendant's acceptance of responsibility, and a downward departure for Defendant's waiver of certain appeal rights, with Defendant retaining his right to file a motion seeking further reduction, departure, deviation, or variance in the final offense level or criminal history category. *Id.* at 3. Also pursuant to this agreement, Defendant agreed to waive his "right to appeal any sentence within the applicable sentencing guideline range and imposed in conformity with this plea agreement . . . [and] any collateral attack to [his] conviction pursuant to 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel." *Id.* at 5. A plea hearing was held before United States Magistrate Judge W. Daniel Schneider on July 1, 2009, at which Defendant testified that he was satisfied with Mr. Gandert's representation and Defendant acknowledged that he had discussed

the waiver of certain "appellate and post[-]conviction rights" with his counsel. [*Doc. 36*, filed in Case No. CR-09-1801, at 4 and 8].

Prior to sentencing, Mr. Gandert filed on Defendant's behalf a sentencing memorandum and motion requesting a downward variance from the advisory guideline range "pursuant to the factors set forth in 18 U.S.C. § 3553 and United States Sentencing Guidelines, 4A1.3(b), 5K2.0 and 5K2.20." [*Doc. 17*, filed in Case No. CR-09-1801, at 1]. Defendant contended that he should receive a lower sentence because he was not offered a standard fast-track plea agreement as the majority of re-entry defendants charged in the District of New Mexico are, and because of Defendant's significant ties to the United States. *Id.* at 2-4. United States District Judge James O. Browning held a sentencing hearing on October 20, 2009, at which the Court noted that the plea agreement "calls for a third level . . . for downward adjustment for acceptance of responsibility" and "stipulates to an offense level of 20, which [is] a downward departure of one level pursuant to . . . the fast-track program." [*Doc. 37* at 3-4]; *see also* [*Docs. 24* and *26*, filed in Case No. CR-09-1801] (Government's motions for §5K3.1 downward departure and §3E1.1(b) downward adjustment) and [*Docs. 25* and *27*, filed in Case No. CR-09-1801] (orders granting those motions, respectively). The Court explained that the offense level of 20 and Defendant's criminal history category of IV established a sentencing guideline range of 51 to 63 months of imprisonment. [*Doc. 37* at 4]. Defendant's counsel argued in support of Defendant's motion for a downward variance. *Id.* at 5-9. In addition, both sides stated that Defendant was ineligible for the standard fast-track plea agreement because of his criminal history. *Id.* at 6, 11-12. The Court found that Defendant's history and characteristics did not justify a variance and sentenced Defendant to 51 months, the low-end of the sentencing guideline range. *Id.* at 15-16, *see also* [*Doc. 28*, filed in Case No. CR-09-1801, at 5] (memorandum opinion and order denying Defendant's motion for

variance [*Doc. 17*]) and [*Doc. 29*, filed in Case No. CR-09-1801, at 1-3] (judgment sentencing Defendant to prison term of 51 months and a three-year term of unsupervised release, and stating that the date of imposition of the judgment is October 20, 2009).

Defendant timely filed his § 2255 motion on June 29, 2010.[3] The Court reviews Defendant's *pro se* pleadings under a liberal standard. *See United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007). However, the Court may not act as his advocate in this proceeding. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

<u>**Discussion**</u>

In his motion Defendant raises three ineffective assistance of counsel claims. First, Defendant claims that his counsel was ineffective for "failing to ask the government [for] an offer to recommend a reduction in his base offense level based on his timely acceptance of responsibility and in accordance with the Fast Track Program for illegal reentry cases." [*Doc. 2* at 5], *see also* [*Doc. 1* at 4]. Second, Defendant states that his counsel was ineffective by failing to argue at sentencing that the imposed 51-month sentence was unreasonable under federal law. [*Doc. 1* at 5] and [*Doc. 2* at 7]. Finally, Defendant contends that his counsel was ineffective for failing to consult with Defendant regarding the filing of a notice of appeal. [*Doc. 1* at 7] and [*Doc. 2* at 10-11]. As relief, Defendant asks the Court to grant him: an evidentiary hearing [*Doc. 1* at 13], and "dismissal of the Count Two in the Indictment, a new trial, new sentencing hearing, or an out-of-time appeal" [*Doc. 2* at 14].

---

[3]A motion under 28 U.S.C. § 2255 is timely if it is filed within one year from the date the conviction becomes final. *See* 28 U.S.C. § 2255(f)(1).

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, Defendant must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance. *Id.* at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* To demonstrate unreasonable performance, Defendant must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Defendant must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. The Court does not have to address both prongs of the *Strickland* standard if Defendant makes an insufficient showing on one of the prongs. *Id.* at 697.

### A.  Failure to Ask the Government for Reduction in Base Offense Level

Defendant's first ineffective assistance of counsel claim is that his counsel should have asked the Government for a reduction in his base offense level based on Defendant's timely acceptance of responsibility and in accordance with the fast-track program for illegal reentry cases. [*Doc. 2* at 5]. Defendant states that his counsel advised him that he did not qualify for the fast-track program (which would allow a departure in his offense level), and that his counsel could not ask for the reduction because, if he did ask for it, Defendant could get a longer sentence if he qualified for the fast-track program. *Id.* Defendant contends that if his counsel had presented a request for the fast-track program to the Government, "there is a possibility that the prosecution would have considered the request, and the sentence would have been different." *Id.* at 6. The Government

responds that Mr. Gandert's performance was not deficient for failing to seek a standard fast-track plea offer for Defendant because Defendant was ineligible for such an offer because of his criminal history. [*Doc. 9* at 7].  The Government explains that even if Mr. Gandert had requested the standard fast-track plea offer for Defendant, the Government could not have agreed to it even if it had wanted to because "[p]ursuant to the terms of the Fast-Track program . . . the United States may not offer a standard Fast-Track plea offer to any defendant with a prior conviction for a crime of violence."[4] *Id.*

The fast-track programs "allow defendants to obtain a downward departure in their offense level under the United States Sentencing Guidelines . . . in exchange for pleading guilty and waiving their rights to file certain motions and to appeal."   *United States v. Martinez-Trujillo*, 468 F.3d 1266, 1267 (10th Cir. 2006) (citation omitted); *see also United States v. Morales-Chaires*, 430 F.3d 1124, 1127 n.1 (10th Cir. 2005) (explaining that New Mexico is one of the states in which these programs are available).  The plea agreement which Defendant signed was pursuant to New Mexico's fast-track program.  *See* [*Doc. 14*, filed in Case No. CR-09-1801], *see also* [*Doc. 37*, filed in Case No. CR-09-1801, at 4].  The agreement provided that the Government would pursue a downward adjustment for Defendant's acceptance of responsibility, and a downward departure for Defendant's waiver of certain appeal rights, to determine Defendant's final adjusted offense level. *See* [*Doc. 14*, filed in Case No. CR-09-1801, at 3].  Defendant's claim that his counsel should have requested a reduction in Defendant's base offense level, therefore, is without merit because the plea agreement already contained such a reduction.  To the extent Defendant is arguing that his counsel should have pursued a further reduction in Defendant's base offense level by requesting the standard

---

[4]Defendant had a prior conviction for aggravated assault with a deadly weapon and trafficking cocaine.  *See* [*Doc. 1*, filed in Case No. CR-09-1801] and [*Doc. 37*, filed in Case No. CR-09-1801, at 6, 11 and 15].

fast-track plea offer, it appears that Defendant was ineligible for the standard fast-track plea agreement because of his criminal history.  *See* [*Doc. 9* at 7], *see also* [*Doc. 37*, filed in Case No. CR-09-1801, at 12] (counsel for the Government stating that "no defendants who have a crime of violence in their past service receive a fast-track plea offer").  Mr. Gandert has provided an affidavit to the Court in which he states that Defendant did not qualify for a standard fast-track plea offer because of his criminal history. [*Doc. 9-4* at 2].  Mr. Gandert's decision not to pursue a standard fast-track plea offer for which Defendant would have been ineligible does not fall below an objective standard of reasonableness.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (holding that counsel's failure to raise meritless issue in underlying criminal case did not constitute ineffective assistance).  In addition, Defendant fails to meet the second *Strickland* prong because he fails to demonstrate that there is a reasonable probability that the outcome of his case would have been different had his attorney requested a standard fast-track plea offer.  *Strickland*, 466 U.S. at 694.  Defendant's statement that there is a possibility the Government would have considered the request is conclusory and does not provide a reasonable probability that Defendant's sentence would have been any different but for his counsel's alleged unprofessional errors.  For these reasons, the Court recommends that this claim be denied.

### B.  Failure to Argue That Sentence was Unreasonable

Defendant next claims that his counsel was ineffective by failing to argue at sentencing that his sentence of 51 months was unreasonable. [*Doc. 1* at 5], [*Doc. 2* at 7].  Defendant states that this sentence is unreasonable because it results in a disparity "among defendants with similar records who have been found guilty of similar conduct." [*Doc. 2* at 7].  Defendant appears to contend that his counsel should have argued that his sentence was unreasonable for two reasons.  First, Defendant states that his counsel should have argued that his sentence was unreasonable because the trial judge

did not consider Defendant's alien status and the fact that he was facing an immigration removal proceeding, and that Defendant would be serving more time in prison than "a U. S. [c]itizen who committed the same offense, equally culpable and received the identical guideline base offense level." *Id.* at 9.  Second, Defendant contends that his counsel should have argued that this sentence was unreasonable in comparison with the sentences imposed on defendants under the fast-track program, and that if he had done so, "there is a reasonable probability that the sentencing [judge] would have considered the factors set forth in § 3553(a)(6) and the application of the fast track program in this case as to avoid disparity among defendants with similar offense[s] and similar record[s]." *Id.* at 10.

The Government responds that Defendant's argument that his counsel was ineffective for failing to seek a sentence reduction based on Defendant's status as a deportable alien should fail because the collateral consequences of Defendant's status as a deportable alien cannot be a basis for a downward departure, and because a sentencing reduction based on Defendant's immigration status is not warranted when his immigration status is an essential element of the offense for which he was convicted. [*Doc. 9* at 8-9] (citations omitted).  The Government states that the Tenth Circuit has held that defense counsel's failure to seek a departure or variance based on the defendant's immigration status does not constitute ineffective assistance of counsel.  *Id.* at 9 (citing *United States v. Nuñez-Fuentes*, No. 05-3422, 184 Fed. Appx. 795, 798, 2006 WL 1689264 (10th Cir. June 21, 2006) (unpublished)).  The Government contends that Defendant fails to establish that a motion based on Defendant's status as a deportable alien would have resulted in a different sentence because Judge Browning at sentencing acknowledged that he was aware of Defendant's immigration status, recommended that removal proceedings be initiated during Defendant's service of his sentence, and advised Defendant to find a way to live in Mexico following service of his sentence.  *Id.* at 9, *see*

also [*Doc. 37*, filed in Case No. CR-09-1801, at 14-17]. In addition, the Government contends that Defendant's counsel made the argument that the 51-month prison sentence was unreasonable as compared to the sentences imposed on defendants who received standard fast-track plea offers at Defendant's sentencing hearing. *Id.* at 10.

The Court finds that Defendant's claim that his counsel was ineffective by failing to argue at sentencing that his 51-month sentence was unreasonable fails. First, to the extent Defendant is claiming that his counsel should have sought a sentence reduction based on Defendant's immigration status, this claim fails because defendants are not entitled to a sentence reduction due to their status as deportable aliens. *See United States v. Tamayo*, No. 04-2307, 162 Fed. Appx. 813, 815, 2006 WL 52792 (10th Cir. Jan. 11, 2006) (unpublished).[5] Defendants are also not entitled to a downward departure based on an essential element of the crime with which they are charged. *See United States v. Valdez-Gomez*, No 01-4044, 15 Fed. Appx. 763, 764, 2001 WL 896894 (10th Cir. Aug. 9, 2001) (unpublished) (holding that where the defendant was charged with illegal reentry, there was not a reasonable probability that the result of the proceeding would have been different had the defendant's counsel argued for a downward departure based on defendant's status as a deportable alien, because that is an essential element of the crime charged). Therefore, Defendant's counsel's failure to argue that the Court should have considered Defendant's status as a deportable alien is not objectively unreasonable because the argument is without merit. *See Fisher*, 38 F.3d at 1147. Moreover, there is no reasonable probability that the outcome would

---

[5]The Court notes that, unlike the defendant in *Tamayo*, Defendant does not raise an equal protection claim because Defendant here is challenging the length of his sentence, not the execution of his sentence. *Tamayo*, 162 Fed. Appx. at 814-16 (remanding to the district court the defendant's claim that he had to serve his sentence under circumstances more severe than citizens of the United States, because it is an equal protection claim challenging the execution of his sentence and should be brought under 28 U.S.C. § 2241 instead of § 2255).

have been any different had his counsel raised the argument, so Defendant cannot show any prejudice from this alleged error.

Second, the Court finds that Defendant's claim that his counsel was ineffective for failing to argue that Defendant's sentence was unreasonable compared to defendants who receive standard fast-track plea offers also fails.  As the Government points out, Mr. Gandert raised this argument in his sentencing memorandum [*Doc. 17*, at 2], as well as at Defendant's sentencing hearing by arguing that Defendant should receive a downward variance in part because Defendant was ineligible for the standard fast-track plea agreement and, instead, was offered a non-standard fast-track plea agreement. [*Doc. 37* at 6].  The trial judge rejected this argument, finding that, based on Defendant's history and characteristics, "nothing seems to justify a variance."  *Id.* at 15.  The trial judge further stated that "if [he] were to vary in this case it would almost have to vary in almost all reentry cases."  *Id.* at 15-16.  The trial judge chose, instead, to sentence Defendant at the low end of the guideline range.  *Id.* at 16.  Therefore, Defendant's argument that his counsel failed to argue that Defendant's sentence should be reduced because he was not offered a standard fast-track plea agreement fails because his counsel did raise this argument and the trial judge rejected it.  For these reasons, the Court finds that Defendant's claim that his counsel was ineffective for failing to argue at sentencing that his sentence was unreasonable should be denied.

## C.  Failure to Consult With Defendant About Filing Notice of Appeal

Finally, Defendant states that his counsel was ineffective for failing to consult with him regarding the filing of a notice of appeal. [*Doc. 1* at 7].  In support of this claim, Defendant states that after his sentence was imposed, he "tried to talk with his counsel about the filing of a notice of appeal to appeal as to [the] sentence imposed," but that his counsel did not discuss with Defendant the possibility of filing an appeal. [*Doc. 2* at 12].  Defendant states that he called his counsel's office

for many days after his sentencing hearing, and that his counsel did not respond to his calls. [*Doc. 3* at 2], *see also* [*Doc. 11* at 5] (wherein Defendant asks for an evidentiary hearing to show that Defendant "made attempts to contact attorney Gandert about to file [sic] an appeal"). In addition, Defendant states in his affidavit that at his sentencing hearing, after the trial judge advised him that he could appeal his sentence, Defendant "responded that [he] wanted to appeal the sentence." [*Doc. 3* at 2].

The Government responds that there is no evidence that Defendant wanted to appeal his sentence, especially because Defendant pled guilty pursuant to a plea agreement, made no indication that he wanted to litigate the charges against him, and makes no claim here as to which defense he wants to raise on appeal. [*Doc. 9* at 11]. The Government notes that Defendant was sentenced at the low-end of the sentencing guideline range and that Defendant's plea agreement expressly waived most of his rights to appeal or collaterally attack his conviction and sentence. *Id.* at 12. In addition, Mr. Gandert has signed an affidavit stating that Defendant never asked him to file an appeal and that Defendant had no non-frivolous appellate issues to raise. [*Doc. 9-4* at 2].

When faced with a claim that counsel was ineffective for failing to file a notice of appeal, the Court must first ask whether counsel consulted with the defendant, advising the defendant about the advantages and disadvantages of filing an appeal and making a reasonable effort to determine the defendant's wishes regarding filing an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). If counsel did consult with the defendant, and the defendant conveyed a specific instruction to counsel to file an appeal, counsel performs in a professionally unreasonable manner by failing to follow the defendant's instructions. *Id.* If counsel did not consult with the defendant, the Court must next determine whether such failure to consult with the defendant constitutes deficient performance by counsel, which is established "when there is reason to think either (1) that a rational

-11-

defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480 ("We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient.") (*id.* at 479). In making this determination, the Court should consider whether the conviction follows a trial or a guilty plea, because a guilty plea reduces the scope of appealable issues and may indicate that the defendant seeks an end to the judicial proceedings. *Id.* at 480. The Court should also consider whether the defendant received the sentence he bargained for in his plea agreement, and whether the plea waived some or all appellate rights. *Id.* In addition, to satisfy the prejudice prong of *Strickland* for failure to file a notice of appeal, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. *Id.* at 484-86.

Here, the record shows that Defendant's counsel did not consult with him about the advantages and disadvantages of filing an appeal. The Court, however, finds that Mr. Gandert's failure to consult with Defendant was not unreasonable because there was no reason for Mr. Gandert to think that a rational defendant would want to appeal, and Defendant did not reasonably demonstrate that he was interested in appealing. The Court finds that there is no reason for Mr. Gandert to think that Defendant wanted to appeal because Defendant's sentence was imposed as a result of a plea agreement which reduced the scope of potentially appealable issues and indicated that Defendant desired to end the judicial proceedings. *See Roe*, 528 U.S. at 480 (explaining that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings").

-12-

In addition, Defendant received a sentence at the low end of the sentencing guidelines, and he was advised of his appellate rights by the trial judge [*Doc. 37* at 18].  *See Roe*, 528 U.S. at 479 (explaining that when: (1) a defendant is advised as to the likely sentence pursuant to a guilty plea and pleads guilty, (2) the defendant receives the expected sentence, (3) the court informs the defendant of his appeal rights, (4) the defendant does not express any interest in appealing, and (5) counsel concludes there are no nonfrivolous grounds for appeal, "[u]nder these circumstances, it would be difficult to say that counsel is professionally unreasonable, as a constitutional matter, in not consulting with such a defendant regarding an appeal") (citation and internal quotation marks omitted).  At his sentencing, the Court explained Defendant's appellate rights to him in detail (*see* [*Doc. 37* at 17-18]), which can "substitute for counsel's duty to consult" (*see Roe*, 528 U.S. at 479-80).  While Defendant states in his affidavit that he stated at his sentencing hearing that he wanted to appeal his sentence, a review of the transcript of the sentencing hearing shows no such statement made by Defendant or his counsel, and nothing in the record supports this contention.  In addition, even though Defendant states in *Document 2* at page 1 that he "communicated [to] his counsel [that] he wished to appeal his case and asked to [sic] his counsel to file a notice of appeal as to appeal the sentence imposed," other statements by Defendant, as well as Mr. Gandert's affidavit, contradict this statement.  Defendant states that his "counsel [n]either tried to talk with [Defendant] about the filing of a notice of appeal or to apprise [Defendant] about the advantages and disadvantages to file to [sic] an appeal, nor counsel ever tried to discuss with [Defendant] the possibility of the filing [of] an appeal as advised by the Court at sentencing." [*Doc. 2* at 12].  In addition, Defendant states that his counsel failed to consult with him regarding the filing of a notice of appeal [*Doc. 1* at 7], and that Defendant "tried to talk" with his counsel about the filing of a notice of appeal but that his counsel "[n]either attempted, nor tried to have an attorney's conference to give

-13-

[Defendant] all [the] details concerning the filing of a notice of appeal" [*Doc. 3* at 2].  Even though Defendant states that he tried to reach his counsel by phone after sentencing, Defendant does not claim that he ever left a message with his counsel that he wanted to file an appeal. *See* [*Doc. 2* at 12], [*Doc. 3* at 2], and [*Doc. 11* at 5].  The Court, therefore, finds that the record does not support a finding that Defendant conveyed a specific instruction to his counsel to file a notice of appeal. *See, e.g.*, *United States v. Kelley*, No. 07-7032, 253 Fed. Appx. 743, 745, 2007 WL 3230402 (10th Cir. Nov. 1, 2007) (explaining that Defendant's request that his counsel "'take care of everything' . . . does not constitute a specific instruction to file an appeal") (unpublished).  For these reasons, the Court finds that Defendant's counsel's failure to consult with Defendant regarding filing an appeal does not constitute deficient performance and, therefore, fails to satisfy the first prong of *Strickland*.

Moreover, even if Defendant had communicated his interest in filing an appeal to his counsel, Defendant fails to show any prejudice by his counsel's alleged ineffective performance. *Roe*, 528 U.S. at 486 (explaining that evidence that a defendant sufficiently demonstrated to counsel his interest in an appeal is not sufficient "to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal"). Defendant makes no showing that he would have appealed his sentence had his counsel consulted with him.  While Defendant is not required to show the grounds he would raise if he were able to appeal (*id.*), the Court can still consider whether Defendant has shown any non-frivolous grounds for appeal as part of determining prejudice, and Defendant has failed to raise any grounds for his appeal.  Defendant has also failed to state any other reasons to support a finding that he would have appealed his sentence. *Id.* ("[A] defendant's inability to specify the points he would raise were his right to appeal reinstated . . . will not foreclose the possibility that he can satisfy the prejudice

-14-

requirement where there are other substantial reasons to believe that he would have appealed.")
(citation and internal quotation marks omitted).  Defendant cites to three Tenth Circuit cases for
their holdings that for claims of ineffective assistance of counsel based on failure to file an appeal,
a defendant is not required to show that the appeal would have merit, and the fact that a defendant
waived his right to appeal does not foreclose a counsel's duty to file a notice of appeal when
instructed to do so.  [*Doc. 2* at 11-12] and [*Doc. 11* at 6] (citing *United States v. Guerrero*, 488 F.3d
1313 (10th Cir. 2007), *United States v. Snitz*, 342 F.3d 1154 (10th Cir. 2003), and *United States v.
Garrett*, 402 F.3d 1262 (10th Cir. 2005)).  All of these cases, however, involve situations where the
defendants established that they had given their attorneys specific instructions to file appeals, and
those instructions were disregarded, which is not the case here.[6]  In addition, the trial judge
explained to Defendant that he could appeal his conviction and sentence, and that Defendant could
apply for leave to appeal *in forma pauperis*, which the trial judge explained to Defendant "means
[that] the Clerk of the Court will prepare and file a notice of appeal upon [Defendant's] request."
[*Doc. 37*, filed in Case No. CR-09-1801, at 18].  Defendant fails to explain why he did not file an
appeal on his own or that he would have done so but for his counsel's alleged ineffective assistance.

As explained above, Defendant has not established that his counsel was ineffective for failing
to consult with him about whether to file an appeal, nor has he established that he instructed his
counsel to appeal his sentence.  Defendant has also failed to establish that he would have filed an
appeal but for his counsel's alleged ineffective assistance.  For these reasons, Defendant's claim that

---

[6]The Court further notes that had Defendant asked his counsel to file an appeal and his counsel determined that
the appeal was "wholly frivolous," then his counsel could have advised the appellate court and requested permission to
withdraw under *Anders v. State of Cal.*, 386 U.S. 738, 744 (1967) (requiring counsel to accompany any such withdrawal
request with "a brief referring to anything in the record that might arguably support the appeal," which should be given
to the defendant to allow the defendant to raise any points he chooses).

his counsel was ineffective for failing to consult with him regarding filing a notice of appeal should be denied.

### D.  Evidentiary Hearing

The Court finds that an evidentiary hearing is unnecessary because Defendant's motion and the record of this case conclusively show that Defendant is entitled to no relief.  The Court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Therefore, no evidentiary hearing will be held.

### Conclusion

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that the claims raised in Mr. Sanchez[-]Calderon's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1)* be **DENIED**, and that Case No. CIV-10-0618 be **DISMISSED with prejudice**.

*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**